Gary **EBBINGHOUSE** and Diana S. Ebbinghouse, Appellants–Plaintiffs,

v.

**FIRSTFLEET, INC.,** Appellees–Defendants.

No. 90A02–9709–CV–598.

Court of Appeals of Indiana.

April 16, 1998.

Christopher C. Myers, Lori W. Jansen, Myers & Geisleman, Fort Wayne, for Appellants–Plaintiffs.

Mark D. Ulmschneider, Jonathan H. Nusbaum, Steele, Ulmschneider & Malloy, Fort Wayne, for Appellees–Defendants.

## OPINION

GARRARD, Judge.

### *STATEMENT OF THE CASE*

Gary Ebbinghouse and Diana S. Ebbinghouse (hereinafter "Ebbinghouse") appeal the trial court's entry of summary judgment in favor of FirstFleet, Inc. ("FirstFleet"). The sole issue presented for our review is whether the trial court erred when it concluded as a matter of law that FirstFleet owed no duty to Ebbinghouse.[1] We affirm.

### *FACTS*

At all times relevant to this appeal, Diana Ebbinghouse was employed by Peyton's Northern, a distributor that provides groceries and general merchandise to Kroger Stores. Peyton's Northern does not transport its own merchandise, but contracts with trucking companies to transport the groceries and merchandise from its warehouse in Bluffton, Indiana, to the various Kroger Stores. FirstFleet is one of those trucking companies. Pursuant to a transportation agreement with FirstFleet, Peyton's Northern loads a trailer with groceries and merchandise, and the trailer is then locked and sealed prior to pickup by FirstFleet. First-Fleet then transports the trailer to the Kroger Store still under the locked and sealed condition. Only a member of management at the Kroger Store destination has the authority to unlock the trailer upon arrival. After each trailer is unloaded, any returned merchandise, as well as empty totes, lids and pallets, are loaded back into the trailer and locked and sealed by a Kroger Store employee. FirstFleet then transports the trailer back to Peyton's Northern's warehouse and leaves the trailer still in the locked and sealed condition. After the trailer is left with Peyton's Northern, the trailer is moved by Peyton's Northern into the loading dock where an employee of Peyton's Northern unlocks and unseals the trailer, and then unloads and cleans the interior of the trailer of the returned merchandise as well as the empty totes, lids, and pallets.

On September 22, 1994, Ebbinghouse was responsible for unloading and cleaning one of the trailers transported to the warehouse by FirstFleet. While performing this task, Ebbinghouse stepped off of a runner she had driven into the trailer and stepped onto a lid. The lid slipped out from under Ebbinghouse causing her to fall backwards onto her wrists. Ebbinghouse sustained injuries as a result of her fall. Because her injuries arose in the course of her employment with Peyton's Northern, Ebbinghouse received worker's compensation benefits for her injury.

On August 13, 1996, Ebbinghouse filed her complaint against FirstFleet and asserted that FirstFleet had carelessly and negligently left the trailer in a dirty condition thereby causing her injuries. FirstFleet subsequently filed its motion for summary judgment and, following a hearing, the trial court entered summary judgment in favor of First-Fleet. This appeal ensued.

### *DISCUSSION AND DECISION*

#### Standard of Review

When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to any fact or inference to be drawn therefrom in favor of the party opposing summary judgment. *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236, 1238 (Ind.Ct. App.1995), *trans. denied.* Summary judgment is appropriate only if the designated evidentiary matter shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The party appealing the entry of summary judgment has the burden of persuading this court that the trial court's grant of summary judgment was erroneous. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

In her brief on appeal, Ebbinghouse makes much of the fact that the trial court here entered findings in support of summary judgment. We note that our standard of review is unchanged by such entries. Findings of fact are not required in the summary

---

1. Because we conclude that the trial court properly entered summary judgment on the issue of duty, we need not discuss the parties' contentions regarding breach and proximate cause.

judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on this Court. *Trout v. Buie,* 653 N.E.2d 1002, 1005 (Ind.Ct. App.1995), *trans. denied.*

## Duty

Ebbinghouse contends that the trial court erred when it concluded that FirstFleet owed no duty to Ebbinghouse as a matter of law. We disagree.

■ To recover in negligence, the plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. *Sheley v. Cross,* 680 N.E.2d 10, 12 (Ind.Ct.App.1997), *trans. denied.* Absent a duty, there can be no breach and, therefore, no recovery for the plaintiff in negligence. *Id.*

■ Our supreme court has held that in determining whether a defendant owed a duty to the plaintiff, we must consider and balance three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). Whether the law recognizes an obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is generally a question of law for the court. *See Kottlowski v. Bridgestone/Firestone, Inc.,* 670 N.E.2d 78, 84 (Ind.Ct.App. 1996), *trans. denied.* However, a factual question may be interwoven with the determination of the existence of a relationship between the parties, making the ultimate determination of the existence of a duty a mixed question of law and fact. *Helmchen v. White Hen Pantry, Inc.,* 685 N.E.2d 180, 181

(Ind.Ct.App.1997), *trans. denied.* Thus, a duty may exist if a certain set of facts is found, notwithstanding that the law does not recognize a general direct duty based upon the parties' legal relationship. *Id.* We are confronted with, and exercise our discretion to decide, a mixed question of law and fact in the instant case.[2]

■ We first address the relationship component of duty. Indiana law recognizes no general duty based upon any legal relationship between Ebbinghouse and First-Fleet which would support a duty on the part of FirstFleet to protect Ebbinghouse against her injuries. FirstFleet was not Ebbinghouse's employer and had no general duty to use reasonable care to provide Ebbinghouse with a safe work environment.[3] Thus, we must determine whether the designated facts establish the existence of a relationship between the parties which would support a duty to use reasonable care.

Ebbinghouse was injured while performing the specific task she was assigned by her employer: cleaning and unloading a trailer. The undisputed evidence indicates that pursuant to the agreement between FirstFleet and Ebbinghouse's employer, Peyton's Northern, FirstFleet was required to deliver its trailers to Peyton's Northern under a locked and sealed condition. Thereafter, it was the sole responsibility of Peyton's Northern to open the sealed trailer, to unload any returned merchandise, and to clean the trailer of the empty totes, lids, and pallets. FirstFleet had no discretion to inspect the condition of the interior of the trailers upon arrival at Peyton's Northern and similarly had no control over how Peyton's Northern's employees carried out their responsibility to unload and clean the trailers. Absent evidence that FirstFleet exercised any control over the instrumentality that caused Ebbinghouse's injury, Ebbinghouse has failed to show that a relationship existed between FirstFleet and Ebbinghouse which would support a duty on the part of FirstFleet to

---

2. Contrary to Ebbinghouse's contention, this Court may determine in the context of summary judgment a mixed question of law and fact. *See Helmchen,* 685 N.E.2d at 181.

3. As a general rule, an employer has a duty to use reasonable care to provide its employees with a reasonably safe work environment. *Whitebirch v. Stiller,* 580 N.E.2d 262, 264 (Ind.Ct. App.1991).

conform its conduct to a certain standard for the benefit of Ebbinghouse under the factual circumstances presented here.

Recognizing that FirstFleet had no control over the trailer upon delivery or over the manner in which she performed her job, Ebbinghouse attempts to create a genuine issue of material fact by concentrating on FirstFleet's alleged failure to strap down the totes and lids prior to transporting them to Peyton's Northern. Ebbinghouse argues that FirstFleet owed her a duty of reasonable care to strap down the totes and lids for her safety and, thus, any failure to do so by FirstFleet constituted a breach of duty. In support of her position, Ebbinghouse designates affidavit testimony of one of her co-workers that "FirstFleet drivers have the opportunity to—and most take advantage of—strapping down their loads with straps provided by Peyton's." Record at 114. Ebbinghouse also makes much of deposition testimony of a FirstFleet driver that he was trained to stack lids and strap them to the wall. Record at 118.

This designated evidence, standing alone, is insufficient to establish a duty on the part of FirstFleet to conform its conduct to a certain standard for the benefit of Ebbinghouse based upon any relationship between the parties. We find nothing in the record that indicates that FirstFleet was required by Peyton's Northern to strap down the totes and lids or that FirstFleet otherwise assumed a duty to strap down the totes and lids. Even if we were to conclude that FirstFleet was required to take such precautions or voluntarily undertook them, there is no evidence that such action was for the benefit or safety of Peyton's Northern's employees. We conclude, as a matter of law, that no relationship existed between Ebbinghouse and FirstFleet which would support the imposition of a duty in negligence.

Next, we consider the foreseeability component of duty. Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Kottlowski,* 670 N.E.2d at 85. The duty of reasonable care is not owed to the world at large but is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty. *Id.* As we have stated, FirstFleet neither controlled the trailer upon its arrival at Peyton's Northern, nor the manner in which Ebbinghouse carried out her duty to unload and clean the trailer. Because FirstFleet had no control over the instrumentality that caused Ebbinghouse's harm, and because we have concluded that FirstFleet had no duty to provide Ebbinghouse with a safe work environment, Ebbinghouse was not a reasonably foreseeable victim injured by a reasonably foreseeable harm vis-a-vis First-Fleet.

Finally, we consider whether public policy concerns support the imposition of a duty in this case. "Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Webb,* 575 N.E.2d at 997. Public policy does not support the imposition of a duty on a third party such as FirstFleet in this case. Ebbinghouse, and not FirstFleet, was in the best position to protect against and to prevent her own injury. As established by the undisputed affidavit testimony of her supervisor, "if Ms. Ebbinghouse had followed the safety procedures as she had been trained to follow, there would have been no lid for her to step on when she got off the runner, no lid would have gone out from under her, and she would not have been injured." Record at 44.

Having considered and balanced the three factors recited in *Webb,* we conclude, as a matter of law, that FirstFleet owed no duty to protect Ebbinghouse. The trial court properly granted summary judgment in FirstFleet's favor.

Affirmed.

HOFFMAN and RUCKER, JJ. concur.